TE'O of Pago Pago, TAVAI ESELA of Pago Pago, ASUEGA S. &
LEALAIFUANEVA of Pago Pago, S. P. MAUGA of Pago Pago,
ALO SIMANU of Fagasa, MAGEO MAAELE & FELISE of Pago
Pago, FUGA SELEGA of Pago Pago, LEOTA of Pago Pago,
SAVEA of Faganeanea, and FOLAU I. TEOFILO of Fatumafuti,
Plaintiffs

.v.

GI of Pago Pago, Defendant

No. 45A-1960

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Utumoa" in Pago Pago]

May 24, 1961

Heard before MORROW, *Chief Judge*, and TAUALA and
APE, *Associate Judges*, on December 12, 13, 14, 15, 16,
19 and 20, 1960 at Fagatogo.

Manuma, Counsel for Te'o; Te'o, Ass't. Counsel, *pro se.*

Fesagaiga, Counsel for Asuega S. & Lealaifuaneva.

Lolo and Tavai, Counsel and Ass't. Counsel, respectively,
for S. P. Mauga.

Faufano, Counsel for Alo Simanu.

Mageo *pro se.*

Fuga *pro se.*

Aumoeualogo, Counsel for Leota; Leota, Ass't. Counsel *pro se.*

Savea *pro se.*

Folau I. Teofilo *pro se.*

Seugogo, Counsel for Gi.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Gi filed his application with the Registrar of Titles to have certain land, known as the Water Catchment Basin and also as Utumoa, in the Village of Pago Pago registered as the communal family land of the Gi Family of Pago Pago. A survey of the tract accompanied the application.

Te'o, Tavai Esela, S. P. Mauga, Alo Simanu, Fuga Selega, Leota, Savea and Folau I. Teofilo each filed a separate objection to the proposed registration, each of them claiming that the land was the communal family land of his family. Hence this litigation. See Section 905, A. S. Code. Asuega S. and Lealaifuaneva also filed an objection claiming that the land was the communal family land of their family. Mageo Maaele and Felise also filed an objection claiming that the land was the communal family land of the Mageo Family. Mageo Maaele died before the hearing and was succeeded by Felise who became the Mageo. Three days before the hearing began the Court viewed the land in the presence of the parties.

The land is being condemned by the Government of American Samoa for public purposes. The determination of ownership is the first step in the condemnation proceedings.

When the hearing began Tavai Esela stated to the Court that while the Tavai people had at one time had some plan-

tations on the tract, nevertheless the part of the tract on which the plantations had been was the land of the Mauga title and not the Tavai title. He stated that such plantations had been put in upon permission received from Mauga Moimoi. Tavai was dismissed as a party in the case upon his own motion, the matter before the Court being the registration of land, not the registration of plantations no longer in existence.

There is a waterfall on the land. Below the fall is a natural water course cutting through the surveyed area in which the water from the falls flows. Above the waterfall is a natural drainage basin from which the water flowing over the falls drains. A considerable distance above the waterfall is the ridge of the mountain between Pago Pago and Fagasa. The Alo Family of Fagasa claims to own at least part of the land on the Pago Pago side of the ridge constituting the drainage basin. The Pago Pago people claim that the Alo Family of Fagasa do not own any land on the Pago Pago side of the ridge. We make no finding as to whether they do or not, since any such finding would, in our opinion, be immaterial in the decision of this case.

Counsel for the Alo Family argue that since some small amounts of eroded soil are naturally washed down from the land in the drainage basin above the waterfall and a little of it may be deposited as alluvion on the sides of the watercourse running through the surveyed tract, it follows that the surveyed tract is the property of the Alo people. It should be stated that the surveyed tract all along both banks of the stream is quite steep. The Court saw the stream and its banks. If any soil from the drainage basin should be deposited as alluvion by the sides of the watercourse, much of it would be washed away upon the occurrence of the next heavy rain. However, "Land formed by accretion belongs to the riparian owner on or against whose bank or shore alluvial matter is deposited. . . ." 93

Corpus Juris Secundum 751. If a little soil from land upstream should be washed down and deposited along the sides of a watercourse running through land downstream, such fact would not divest the owner of the land downstream of his ownership of such land and invest the owner of the land upstream with the ownership of the downstream land, although such is the claim of counsel for the Alo Family. But the claim is fallacious and has no standing in the law. We might as well say that if a plane flying over a man's land should fall on it, then the owner of the plane would become owner of the land. Such a proposition would be preposterous. Counsel for the Alo Family contended since a landslide had caused some soil and rock from what he claimed to be Alo land above the waterfall to be deposited on a part of the surveyed land below the waterfall, that such occurrence made the owner of the land on which the slide originated the owner of the land below the waterfall. Such contention is unsound.

The Alo title of Fagasa is split three ways: one holder being objector Alo Simanu, the second holder Alo Pepe, and the third Alo Fea. Alo Fea told the Court that the Alo title had no land inside the surveyed tract. Chief Atuatasi of Fagasa, a member of the Alo Family, told the Court that the Alo Family had never cleared any of the surveyed tract from the bush and put in plantations on it. This Court has held many times that Samoans acquired title to their lands through first occupancy accompanied by a claim of ownership. *Soliai v. Lagafua*, No. 5-1949 (H.C. Am. S.); *Faataliga v. Fano*, No. 80-1948 (H.C. of Am. S.). See 2 Blackstone 8; Maine's Ancient Law (3rd Ed.) 238. There was no evidence whatever that the Alo Family had ever occupied any part of the surveyed tract.

Our conclusion is that the Alo Family is not the owner of any part of the surveyed tract offered by Gi for registration.

Objector Savea of Faganeanea, whose title is attached to the Village of Matu'u, testified that the Savea people did not cut any of the virgin bush inside the surveyed tract and that they had never had any plantations inside it. He also testified that the Savea people had never had a fale on the land either before or after the establishment of the Government. We believe from the evidence that the Savea people have never occupied any part of the surveyed tract.

Our conclusion is that no part of the land inside the surveyed tract is owned by the Savea.

Objector Folau I. Teofilo claims that the surveyed land is the property of the Folausaua title attached to the Villages of Pue and Mutiatele in Upolu. Folau is a member of the Folausaua Family. However, he was not authorized by the holder of the Folausaua title to make any claim to the surveyed tract in behalf of the Folausaua Family. Folau testified that about 200 years before the Government was established in 1900 the Folausaua came from Upolu to Pago Pago and married Tulimalefoi, the daughter of a Mauga; that the Folausaua people came over from Upolu and cut the virgin bush on the tract more than 250 years ago and put in plantations on it. Witness Folau got this story from his mother. It was just hearsay handed down by word of mouth for over 250 years. Such hearsay stories, although they may be a family tradition, have very little, if any, worth as evidence. If A tells B a story and B repeats it to C 25 years later and C to D 25 years after he heard it and D to E 25 years after he heard it and E to F 25 years after he heard it, the chances are if A could be resurrected from the dead and F repeat the story to A 100 years after A told it to B that A might not even recognize it. Stories handed down by word of mouth for 250 years have very little, if any, reliability. We think this hearsay story about the Folausaua people coming over from Upolu and clearing this land over 250 years ago and putting in plantations

on it is in the category of fairy tales. When the Navy came to Tutuila 60 years ago the population of Tutuila was less than one-third of what it is now. It is reasonable to suppose that the population was much less 200 years before the Navy came than it was in 1900. The surveyed tract (the Court saw it) is a long way from the inhabited Village of Pago Pago. People in a village clear the land close to their village first, and they don't clear land a long way from the village until the population has increased to a point where it is necessary in order to have such cleared land for plantations. Certainly it was not necessary for the Pago people 250 years ago to clear land as far from their village as the surveyed tract in order to have space for plantations. While the witness Folau first testified that the Folausaua people cleared the surveyed tract over 250 years ago, he later testified that he did not know whether they did or not. It may be true, as the witness testified, that the Folausaua came from Upolu over 250 years ago and married Tulimalefoi, the daughter of Mauga. However, there was no evidence that Mauga gave any land to the title Folausaua. The Folausaua is not a member of the Village Council of Pago Pago. He belongs in Upolu. The witness testified that the Mauga gave the surveyed tract to Tulimalefoi. Even if he did, that would not make it the communal land of the family of her husband. However, the story about the gift is just hearsay piled on hearsay. It may very well be that Mauga did as a matai assign some of his communal family land to Tulimalefoi and her husband for their use in accordance with Samoan custom. But such an assignment of land by the matai is not a gift, and the assignee is not invested with ownership of the land. The assignee can only use it. Should it be conceded that there was a gift, nevertheless the evidence shows that this land has been in the possession of certain other claimants for more than 20 years under conditions making their possession

190

adverse to the descendants of Tulimalefoi. Under such circumstances, if the land ever was the property of Tulimalefoi, it is not now and has not been for many years the property of the descendants of Tulimalefoi.

Section 907(2) of the A. S. Code provides that the "statutory period governing acquisition of title by adverse possession" shall be 20 years. Section 349 of the Code provides that "actions may be brought within the times herein limited, respectively, after their causes accrue and not afterwards, except when otherwise specially declared: . . . (4) Those brought for the recovery of real property, within 20 years." The effect of the running of the statutory period for 20 years is to divest the owner of his title and invest the adverse possessor with the title. 2 Corpus Juris Secundum 803. In *High Chief Fuimaono v. Moananu and Felila*, No. 12-1955 (H.C. of Am. S.) we said that "Adverse possession for the statutory period (it is 20 years in American Samoa, A. S. Code, Section 907) vests title in the adverse possessor." The Supreme Court of the United States announced this same rule in *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 607.

Witness Folau testified that when the Folausaua came to Pago Pago from Upolu over 250 years ago he brought with him a young man named Mataumu and that he became the first Gi of Pago Pago Village. The Gi, the former Mataumu, had no blood connection with the Folausaua Family; also none with the Mauga Family. Folau claimed that Gi Family members had worked on the surveyed tract and that, therefore, it became the property of the Folausaua. However, he also claimed that "All the lands on which Gi works are the lands belonging to the Honorable Mauputasi." Folau's claims are obviously contradictory. In one breath he claims that the surveyed land is the property of Folausaua; in the next, the property of Mauga.

It should be stated that conceding that Mataumu (later the Gi) was brought to Pago Pago from Upolu in a boat by the Folausaua (and that is just a hearsay story originating over 250 years ago), it would not follow that any land on which Gi or his descendants worked would become the property of the Folausaua. Assuming Gi and his descendants did work on the surveyed tract, there was no trustworthy evidence whatsoever that the Gi or his family members cleared it from the bush and occupied and claimed it for the Folausaua. The fact, if it was a fact, that Mataumu was brought to Pago Pago by Folausaua did not make Mataumu a member of the Folausaua Family. Witness Folau, who is a member of the Folausaua Family, testified that he had never been on the surveyed tract until December 9, 1960, when the Court viewed it in the presence of all the parties in the case.

It is our conclusion from the evidence that no part of the surveyed tract is the property of the Folausaua Family of Upolu.

Much of the evidence in this case—and the Court heard witnesses testify for five days—is conflicting; one story being told us by one witness, a contradictory story by another witness. Many of the claimants claim to own the same piece of land.

Nevertheless, despite the great conflict in the testimony, we believe that the weight of the evidence is to the effect that the Gi people the Te'o people, the Tavai people (for Mauga and upon the authority of the Mauga), the Asuega people, the Mageo people, the Fuga people, and the Leota people each cleared a part of the surveyed tract from the virgin bush, occupied such part and claimed it as their own land.

As stated before, this Court has held many times that the Samoans acquired title to their lands through first occu-

192

pancy accompanied by claim of ownership. *Soliai v. Lagafua,* supra, and *Faataliga v. Fano,* supra.

When the Court was determining the ownership of various parts of the surveyed tract known as the Water Catchment Basin and also as Utumoa, subsequent to the hearing in open court, it found that the survey filed with the application to register was incorrect. The Court then arranged with the Government Surveyor to have another survey of the tract made upon giving notice to the parties concerned. Notice was given and the interested parties attended the survey. The corrected survey, received by the Court on May 3, 1961, shows that the surveyed tract contains 6.74 A. ± instead of 6.9 A. ± as indicated by the first survey.

It is our conclusion from the evidence that the Gi Family is the owner of 0.30 A. ± in the surveyed tract; the Te'o Family 0.40 A. ± in such tract; the Asuega and Lealaifuaneva Families 0.89 A. ± in it; the Mauga Family 2.00 A. ± in it; the Mageo Family 2.04 A. ± in it; the Fuga Family 0.10 A. ± in it and the Leota Family 1.01 A. ± in it.

### DECREE

Accordingly, it is ORDERED, ADJUDGED AND DE-CREED that the surveyed tract known as the Water Catchment Basin and also as Utumoa consisting of 6.74 A. ± shall be registered as follows:

0.30 A. ± thereof as the communal family land of the Gi title of Pago Pago;

0.40 A. ± thereof as the communal family land of the Te'o title in Pago Pago;

0.89 A. ± thereof as the communal family land of the Asuega and Lealaifuaneva titles of Pago Pago;

2.00 A. ± thereof as the communal family land of the Mauga title of Pago Pago;

2.04 A. ± thereof as the communal family land of the Mageo title of Pago Pago;

0.10 A. ± thereof as the communal family land of the Fuga title of Pago Pago;

1.01 A. ± thereof as the communal family land of the Leota title of Pago Pago.

Costs in the sum of $160.00 are hereby assessed against Gi, Te'o, Asuega, S. P. Mauga, Atuatasi (he represented the Alo Family at the hearing), Mageo Felise, Fuga Selega, Leota, Savea, Folau I. Teofilo, the assessment with respect to each of these ten persons being $16.00. No costs are assessed against objector Tavai, since he withdrew as a party. However, since the above land is being taken by the Government of American Samoa for public purposes, the above court costs will be paid by the Director of Budget and Finance pursuant to the directive of the Governor of American Samoa (Reference GAS/1A over Serial 755) dated December 17, 1957 to the Director of Budget and Finance.